# EXHIBIT B

Back to the Newsroom



   

# Pomerantz Law Firm Announces The Filing of a Class Action Against Nutex Health Inc. And Certain Officers - NUTX

Friday, 22 August 2025 08:45 PM

Topic: Class Action

**NEW YORK CITY, NY** / [ACCESS Newswire](#) / **August 22, 2025** / Pomerantz LLP announces that a class action lawsuit has been filed against Nutex Health Inc. ("Nutex" or the "Company") (NASDAQ:NUTX) and certain officers. The class action, filed in the United States District Court for the Southern District of Texas, and docketed under 25-cv-03999, is on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Nutex securities between August 8, 2024 and August 14, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

If you are an investor who purchased or otherwise acquired Nutex securities during the Class Period, you have until October 21, 2025 to ask the Court to appoint you as Lead Plaintiff for the class. A copy of the Complaint can be obtained at [www.pomerantzlaw.com](http://www.pomerantzlaw.com). To discuss this action, contact Danielle Peyton at [newaction@pomlaw.com](mailto:newaction@pomlaw.com) or 646-581-9980 (or 888.4-POMLAW), toll-free, Ext. 7980. Those who inquire by e-mail are encouraged to include their mailing address, telephone number, and the number of shares purchased.

### [Click here for information about joining the class action]

Nutex is a physician-led, healthcare services and operations company that began publicly trading via a reverse merger in April 2022. The Company operates through three divisions: a hospital division comprised of 24 hospital facilities in 11 states, a population health management division, and real estate. Nutex generally operates as an out-of-network provider and generates revenue, in part, from contracts with patients and, in most cases, a third-party payor such as commercial insurance, workers compensation insurance or, in

limited cases, Medicare or Medicaid. According to Nutex, on average, greater than 90% of its net patient service revenue is paid by third-party payors.

Prior to 2022, if a patient with health insurance received care from an out-of-network provider, even unknowingly, the patient's health plan might not have covered the entire out-of-network cost, leaving the patient with higher costs than if the care had come from an in-network provider. In addition to any out-of-network cost sharing the patient might have owed, the out-of-network provider could bill the patient for the difference between the billed charge and the amount the patient's health plan paid, unless banned by state law-a practice called "balance billing". An unexpected balance bill from an out-of-network provider is frequently referred to as a "surprise bill".

In December 2020, to curb surprise out-of-network billing, Congress enacted the No Surprises Act ("NSA"). The NSA, which took effect January 1, 2022, requires private health plans to cover out-of-network claims and apply in-network cost sharing, and prohibits doctors, hospitals, and other covered providers from billing patients more than the in-network cost sharing amount for surprise medical bills. In addition, the NSA established an independent dispute resolution ("IDR") process to determine out-of-network payment amounts between health plans and providers when open negotiations fail to result in an agreed-upon payment amount.

In the IDR process, the provider and health plan each submit a proposed payment amount and additional information supporting their payment offers to an arbitrator, a certified IDR entity. The arbitrator must select one of the two proposed payment amounts, taking into account the "qualifying payment amount" ("QPA")-the median contract rate for like specialties in the same geographical market-and additional circumstances including, among other things, the level of training, outcomes measurements of the facility, the acuity of the individual treated, and the case mix and scope of services of the facility providing the service.

Initially, as an out-of-network provider, Nutex's business suffered after the NSA went into effect. Specifically, because cost sharing under the statute is generally based on the median in-network rate a health plan pays for a service, the NSA prevented Nutex from charging patients higher prices for its services through out-of-network billing. Indeed, in March 2023, Nutex reported that "since the NSA became effective [. . .] our average payment by insurers of patient claims for emergency services has declined by approximately 30% including as much as a 37% reduction for physician services." The Company stated that, "[i]n our experience, insurers often initially pay amounts lower than the QPA without regard for other information relevant to the claim. This requires us to make appeals using the IDR process."

In response, in July 2024, the Company engaged with HaloMD, a "third-party IDR vendor," to "assist in the recovery of certain out of network claims" in the IDR process. While Nutex did not disclose the identity of its third-party IDR vendor to investors at that time, the Company shortly thereafter began to tout the success of its "arbitration strategy" in increasing its revenues. For example, in August 2024, Nutex stated that it "believe[s] [] there is a lot of potential incremental value and revenue to be gained from arbitration" and "[i]n recent articles and public data, we are seeing that providers are prevailing 70% to 80% of the time in arbitration." Then, in March 2025, announcing its fourth quarter and full year 2024 results, Nutex reported that "total revenue increased $232.3 million to $479.9 million for the year ended December 31, 2024" and

that "[t]he arbitration process resulted in approximately $169.7 million more in revenue in 2024 than in 2023, which amounted to approximately 73.1% of the $232.3 million revenue increase."

At all relevant times, the Company has identified material weaknesses in its internal control over financial reporting. Specifically, Nutex has acknowledged that it had "ineffective design, implementation, and operation controls over logical access, program change management, and vendor management controls," that "business process controls across all financial reporting processes were not effectively designed and implemented to properly address the risk of material misstatement, including controls without proper segregation of duties between preparer and reviewer and key management review controls," and "ineffective design and implementation of controls over the completeness and accuracy of information included in key spreadsheets supporting the financial statements." However, Nutex has consistently represented that it has "started the process of designing and implementing effective internal control measures to remediate the reported material weaknesses."

The Complaint alleges that, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) HaloMD was achieving lucrative arbitration results for Nutex by engaging in a coordinated scheme to defraud insurance companies; (ii) as a result, to the extent that they were the product of fraudulent conduct, revenues attributable to the Company's engagement with HaloMD in the IDR process were unsustainable; (iii) in addition, the Company overstated the extent to which it had remediated, and/or its ability to remediate, the material weaknesses in its internal controls over financial reporting; (iv) as a result, the Company was unable to effectively account for the treatment of certain of its stock based compensation obligations; (v) as a result, Nutex improperly calculated these stock based compensation obligations as equity rather than liabilities; (vi) the foregoing increased the risk that the Company would be unable to timely file certain financial reports with the United States Securities and Exchange Commission ("SEC"); (vii) accordingly, Nutex's business and/or financial prospects were overstated; and (viii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

On July 22, 2025, Blue Orca Capital ("Blue Orca") issued a short report on Nutex (the "Blue Orca Report" or the "Report"). The Blue Orca Report alleged, among other things, that "HaloMD achieved dramatically lucrative results for clients like Nutex by engaging in a coordinated fraudulent scheme to steal millions of dollars from insurance companies on behalf of and in conjunction with its healthcare billing clients."

Specifically, Blue Orca referenced three recent "bombshell lawsuits" filed against HaloMD. The lawsuits, brought variously by Blue Cross Blue Shield Healthcare Plan of Georgia, Inc., Community Insurance Company d/b/a Anthem Blue Cross and Blue Shield, and Anthem Blue Cross Life and Health Insurance Company and Blue Cross of California d/b/a Anthem Blue Cross, allege that HaloMD violated various federal and state laws by submitting false attestations of eligibility and initiating massive volumes of IDR disputes.

As summarized by Blue Orca, the plaintiffs in these lawsuits accused HaloMD and its clients of "flooding the arbitration system with thousands of claims that they knew at the time of submission to be ineligible" and alleging that HaloMD was able to garner improper payments by "falsely attesting to the eligibility of claims and [. . .] improperly inflating payment offers that far exceeded the amounts to which providers should have been entitled." Accordingly, Blue Orca concluded that "it may just be a matter of time before another suit is filed against HaloMD, this time including Nutex," and "once Nutex can no longer use the NSA arbitration system to receive unsustainably high reimbursement rates, our suspicion is that Nutex will return to penny stock status."

Following publication of the Blue Orca Report, Nutex's stock price fell $11.18 per share, or 10.05%, to close at $100.01 per share on July 22, 2025.

On July 24, 2025, Nutex issued a press release responding to the Blue Orca Report, stating that it "strongly disagrees with the allegations in the report" and that it "expects to provide related updates in its upcoming earnings release and Form 10-Q for the second quarter of 2025 due on or before August 14, 2025."

However, after the market closed on August 14, 2025, Nutex announced that it would "delay filing its Form 10-Q for the period ending June 30, 2025", citing "non-cash accounting adjustments related to the treatment of stock-based compensation obligations for certain under-construction and ramping hospitals, as disclosed in previous filings."

When Nutex failed to rebut the allegations of the Blue Orca Report, the Company's stock price fell $18.22 per share, or 16.39%, to close at $92.91 per share on August 15, 2025.

After the end of the Class Period, on August 21, 2025, Nutex filed a Current Report on Form 8-K with the SEC which, among other things, contained a Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard and stated that the Audit Committee of the Company's Board of Directors concluded that certain of the Company's previously issued financial statements "treated non-cash obligations related to under-construction and ramping hospitals as equity rather than liabilities and should be restated." This filing also purported to address the Blue Orca Report. However, Nutex merely provided a generalized description of the arbitration process under the NSA and the Company's own claims process, acknowledged that Nutex had engaged HaloMD to assist in the IDR process, and discussed two of the three recent lawsuits filed against HaloMD, noting that the Company had not been named as a Defendant. As such, Nutex's filing did not in fact meaningfully rebut any of the allegations contained in the Blue Orca Report.

Pomerantz LLP, with offices in New York, Chicago, Los Angeles, London, Paris, and Tel Aviv, is acknowledged as one of the premier firms in the areas of corporate, securities, and antitrust class litigation. Founded by the late Abraham L. Pomerantz, known as the dean of the class action bar, Pomerantz pioneered the field of securities class actions. Today, more than 85 years later, Pomerantz continues in the tradition he established, fighting for the rights of the victims of securities fraud, breaches of fiduciary duty, and corporate misconduct. The Firm has recovered billions of dollars in damages awards on behalf of class members. See www.pomlaw.com.

Attorney advertising. Prior results do not guarantee similar outcomes.

**SOURCE:** Pomerantz LLP