**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| IN RE NUTEX HEALTH INC. SECURITIES LITIGATION | Case No. 4:25-cv-03999 |
| THIS DOCUMENT RELATES TO: 4:25-CV-03999 | |

## <u>DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT AND SUPPORTING MEMORANDUM</u>

**TROUTMAN PEPPER LOCKE LLP**

Roger B. Cowie
State Bar No. 00783886
S.D. Tex. Bar No. 18886
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
T: (214) 740-8000
F: (214) 740-8800
roger.cowie@troutman.com

Mary M. Weeks (admitted *pro hac vice*)
Bianca N. DiBella (*pro hac vice* pending)
600 Peachtree St. NE, Suite 3000
Atlanta, Georgia 30308
T: (404) 885-3000
mary.weeks@troutman.com
bianca.dibella@troutman.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 2

FACTUAL BACKGROUND .......................................................................................... 3

I.      Nutex and the Impact of the No Surprises Act.................................................. 3

II.     Nutex Engages Third-Party IDR Vendor, HaloMD. .......................................... 4

III.    The Blue Orca Report and Litigation Against HaloMD and Other
        IDR Vendors. ................................................................................................... 6

IV.     Nutex's Restatement of Year-End 2024 and First-Quarter 2025 Financials. ......... 8

V.      Plaintiffs' Conclusory Allegations of Materially False and Misleading
        Statements. ...................................................................................................... 11

STATEMENT OF ISSUES .......................................................................................... 12

ARGUMENT................................................................................................................ 13

I.      PLAINTIFFS' SECTION 10(b) CLAIM SHOULD BE DISMISSED .................. 13

        A.      The Complaint Fails to Adequately Plead Scienter. ................................. 13

                1.      Group Pleading and Conclusory Allegations Cannot Establish
                        Scienter. ........................................................................................ 13

                2.      The IDR Allegations Are Insufficient to Support a Scienter
                        Inference. ....................................................................................... 14

                3.      The Restatement Allegations Are Insufficient to Support a
                        Scienter Inference.......................................................................... 15

                        a.      GAAP violations and internal control weaknesses do not
                                support scienter. .................................................................. 15

                        b.      Auditor changes and SOX certifications do not support
                                scienter ............................................................................... 18

                4.      Confidential Witnesses and Internal Reports Are Absent
                        From the AC. .................................................................................. 19

                5.      The Non-Culpable Inferences Outweigh the Culpable Ones. ........... 20

                6.      Plaintiffs' Failure to Plead Motive Undermines a Finding of
                        Scienter. ........................................................................................ 21

                7.      The AC Fails to Adequately Plead Nutex's Corporate Scienter. ...... 22

        B.      Plaintiffs Have Failed to Plead an Actionable Material Misstatement. ...... 22

1.      The IDR Disclosures Do Not Constitute Materially False
Statements. ................................................................................ 22

2.      The Accounting Classification of Nutex's Stock-Issuance
Obligations Does Not Constitute a Materially False Statement. ..... 24

3.      Defendants' Forward-Looking Statements Are Protected by
the PSLRA's Safe Harbor. ............................................................. 26

C.      The Complaint Does Not Adequately Plead Loss Causation. ...................... 27

1.      The Blue Orca Report Does Not Constitute a Corrective
Disclosure. .................................................................................. 27

2.      The Restatement Does Not Constitute a Corrective Disclosure. ..... 29

II.      PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED .................. 30

CONCLUSION ................................................................................................. 30

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abrams v. Baker Hughes, Inc.*,
    292 F.3d 424 (5th Cir. 2002) ...................................................................... 12, 16, 20, 21

*Alaska Elec. Pension Fund v. Asar*,
    768 F. App'x 175 (5th Cir. 2019) ............................................................................ 15

*In re Am. Bus. Fin. Servs., Inc. Secs. Litig.*,
    413 F. Supp. 2d 378 (E.D. Pa. 2005) ...................................................................... 23

*In re ArthroCare Corp. Sec. Litig.*,
    726 F. Supp. 2d 696 (W.D. Tex. 2010)..................................................................... 15

*Bajjuri v. Raytheon Techs. Corp.*,
    No. 20-00468, 2023 WL 3650554 (D. Ariz. May 25, 2023) ...................................... 29

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012) ...................................................................... 22

*Burback v. Oblon*,
    No. 20-CV-946, 2021 WL 4477607 (E.D. Tex. Sept. 30, 2021),
    *aff'd sub nom. Burback v. Brock*,
    No. 22-40609, 2023 WL 4532803 (5th Cir. July 13, 2023) ...................................... 19

*Callinan v. Lexicon Pharms., Inc.*,
    479 F. Supp. 3d 379 (S.D. Tex. 2020),
    *aff'd*, 858 F. App'x 162 (5th Cir. 2021)..................................................................... 30

*Carlton v. Cannon*,
    184 F. Supp. 3d 428 (S.D. Tex. 2016) ...................................................................... 24

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    No. 10-CV-2835, 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) .............................. 19

*City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*,
    No. 22-80418, 2023 WL 1998174 (S.D. Fla. Feb. 13, 2023),
    *report and recommendation adopted*,
    2023 WL 2601816 (S.D. Fla. Mar. 22, 2023).......................................................... 17

*City of Dearborn Heights Act 345 Police &*
  *Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) ...................................................................................... 25

*Coggins v. Camber Energy Inc.*,
  693 F. Supp. 3d 736 (S.D. Tex. 2023) ........................................................................ 27

*In re CrowdStrike Holdings, Inc. Secs. Litig.*,
  No. 24-CV-857, 2026 WL 89682 (W.D. Tex. 2026)..................................................... 21

*Dawes v. Imperial Sugar Co.*,
  975 F. Supp. 2d 666 (S.D. Tex. 2013) ........................................................................ 14

*In re Dell Inc., Sec. Litig.*,
  591 F. Supp. 2d 877 (W.D. Tex. 2008).........................................................................29

*Dorsey v. Portfolio Equities, Inc.*,
  540 F.3d 333 (5th Cir. 2008) ........................................................................................ 3

*In re DraftKings Inc. Secs. Litig.*,
  650 F. Supp. 3d 120 (S.D.N.Y. 2023).......................................................................... 22

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)..................................................................................................... 12

*Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*,
  905 F.3d 892 (5th Cir. 2018) ...................................................................................... 28

*Fener v. Belo Corp.*,
  513 F. Supp. 2d 733 (N.D. Tex. 2007) .......................................................................... 3

*Ferguson v. Extraco Mortg. Co.*,
  264 F. App'x. 351 (5th Cir. 2007) ................................................................................. 7

*Fin. Acquisition Partners LP v. Blackwell*,
  440 F.3d 278 (5th Cir. 2006) ...................................................................................... 12

*Firefighters Pension & Relief Fund of City of New Orleans v. Bulmahn*,
  53 F. Supp. 3d 882 (E.D. La. 2014)............................................................................ 28

*In re Franklin Bank Corp. Sec. Litig.*,
  782 F. Supp. 2d 364 (S.D. Tex. 2011),
  *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*,
  464 F. App'x 334 (5th Cir. 2012) .................................................................... 12, 14, 25

- iv -

*Genesee Cty. Emps.' Ret. Sys. v. FirstCash Holdings, Inc.*,
    667 F. Supp. 3d 295 (N.D. Tex. 2023) ........................................................ 1, 15, 24, 28

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
    763 F. Supp. 3d 1027 (C.D. Cal. 2025) ....................................................................... 27

*In re GOL Linhas Aereas Inteligentes S.A. Sec. Litig.*,
    598 F. Supp. 3d 63 (E.D.N.Y. 2022) ........................................................................... 18

*Goldstein v. MCI WorldCom*,
    340 F.3d 238 (5th Cir. 2003) ...................................................................................... 21

*Hunt v. Bloom Energy Corp.*,
    No. 19-CV-02935, 2021 WL 4461171 (N.D. Cal. Sept. 29, 2021),
    *aff'd sub nom. Hunt v. PricewaterhouseCoopers LLP*,
    159 F.4th 603 (9th Cir. 2025) ..................................................................................... 25

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) .................................................................... 12, 14, 17, 23

*In re Integrated Elec. Servs., Inc. Sec. Litig.*,
    No. 04-CV-3342, 2006 WL 54021 (S.D. Tex. Jan. 10, 2006), *aff'd*
    *sub nom. Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
    497 F.3d 546 (5th Cir. 2007) ...................................................................................... 15

*Kew v. Bank of Am., N.A.*,
    No. 11-CV-2824, 2012 WL 1414978 (S.D. Tex. Apr. 23, 2012) ................................... 6

*In re Key Energy Servs., Inc. Sec. Litig.*,
    166 F. Supp. 3d 822 (S.D. Tex. 2016) ........................................................................ 19

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
    810 F.3d 951 (5th Cir. 2016) ...................................................................................... 13

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ...................................................................................... 28

*Lovelace v. Software Spectrum Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ................................................................................ 13, 18

*Magruder v. Halliburton Co.*,
    No. 05-CV-1156, 2009 WL 854656 (N.D. Tex. Mar. 31, 2009) .................................. 29

*In re Marsh & Mclennan Cos., Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................................................ 23

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)..................................................................................................23

*May v. KushCo Holdings, Inc.*,
   No. 19-CV-00798, 2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ...........................17

*McNulty v. Kanode*,
   No. 13-CV-026, 2013 WL 12077503 (W.D. Tex. Nov. 6, 2013)...............................27

*Messner v. USA Techs., Inc.*,
   No. 15-CV-5427, 2016 WL 1466543 (E.D. Pa. Apr. 13, 2016).................................21

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ................................................................................29

*Meyer v. Greene*,
   710 F.3d 1189 (11th Cir. 2013) ..............................................................................27

*Mortensen v. AmeriCredit Corp.*,
   123 F. Supp. 2d 1015 (N.D. Tex. 1999) ...................................................................20

*Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*,
   935 F.3d 424 (5th Cir. 2019) ..................................................................................12

*Nathenson v. Zonagen Inc.*,
   267 F.3d 400 (5th Cir. 2001) ..................................................................................24

*Neiman v. Bulmahn*,
   854 F.3d 741 (5th Cir. 2017) ..................................................................................20

*Ng v. Berkeley Lights, Inc.*,
   No. 21-CV-09497, 2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ..............................23

*In re Ocugen, Inc. Sec. Litig.*,
   659 F. Supp. 3d 572 (E.D. Pa. 2023), *aff'd*,
   No. 23-1570, 2024 WL 1209513 (3d Cir. Mar. 21, 2024)........................................19

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015).........................................................................................25, 26

*Owens v. Jastrow*,
   789 F.3d 529 (5th Cir. 2015) .............................................................................17, 20

*Paxton v. Provention Bio, Inc.*,
   No. 21-11613, 2022 WL 3098236 (D.N.J. Aug. 4, 2022) ........................................22

*Phillips v. Harvest Nat. Res., Inc.*,
  No. 13-CV-801, 2016 WL 4523849 (S.D. Tex. Aug. 25, 2016) .......................... 18, 25

*Plaisance v. Schiller*,
  No. 17-CV-3741, 2019 WL 1205628 (S.D. Tex. Mar. 14, 2019) .............................. 21

*Plumbers, Pipefitters & MES Loc. Union No. 392*
  *Pension Fund v. Fairfax Fin. Holdings Ltd.*,
  886 F. Supp. 2d 328 (S.D.N.Y. 2012)........................................................................ 25

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
  645 F. Supp. 2d 210 (S.D.N.Y. 2009)........................................................................ 30

*In re Progress Energy, Inc.*,
  371 F. Supp. 2d 548 (S.D.N.Y. 2005)........................................................................ 24

*Pub. Emps. Ret. Sys. of Miss., P.R. Teachers Ret. Sys. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) .............................................................................. 13, 28

*R2 Invs. LDC* v. *Phillips*,
  401 F.3d 638 (5th Cir. 2005) ..................................................................................... 22

*Rosenzweig v. Azurix Corp.*,
  332 F.3d 854 (5th Cir. 2003) ..................................................................................... 24

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015)........................................................................... 24

*Schott v. Nobilis Health Corp.*,
  211 F. Supp. 3d 936 (S.D. Tex. 2016) .................................................... 2, 16, 18, 19

*Schweitzer v. Invs. Comm. of Phillips 66 Savings Plan*,
  960 F.3d 190 (5th Cir. 2020) ..................................................................................... 10

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
  365 F.3d 353 (5th Cir. 2004) .......................................................................... 13, 22, 30

*Teamsters Local 456 Pension Fund v. Universal Health Servs.*,
  396 F. Supp. 3d 413 (E.D. Pa. 2019) ......................................................................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................................. 12, 20

*Zishka* v. *Am. Pad & Paper Co.*,
  No. 98-CV-0660, 2000 WL 1310529 (N.D. Tex. Sept. 13, 2000) ............................. 12

**Statutes**

15 U.S.C. § 78j(b) ("Section 10(b)")................................................................*passim*

15 U.S.C. § 78t ("Section 20(a)")................................................................ 2, 13, 30

15 U.S.C. § 78u ("Private Securities Litigation Reform Act") ................................*passim*

Fed. R. Civ. P. 9(b)................................................................ 1, 12, 13

Fed. R. Civ. P. 12(b)(6) ................................................................ 1

**Other Authorities**

Becker's Healthcare Webinar: Navigating Headwinds and Tailwinds in
  IDR under NSA, available at
  https://www.youtube.com/watch?v=g2udecJ21bI&t=16s.............................................. 5

*Federal IDR Tables for Q4 2024*, CNTR FOR MEDICARE & MEDICAID
  SERVS., available at https://www.cms.gov/nosurprises/policies-and-
  resources/reports ................................................................ 6, 7

KPMG LLP, *Share-based payment handbook* (2025) ........................................................ 17

*No Surprises Act (NSA) Independent Dispute Resolution (IDR) Process
  Data Analysis for 2024*, available at https://www.congress.gov/crs-
  product/R48738................................................................ 8

PricewaterhouseCoopers, *Business combinations and noncontrolling
  interests guide* (Feb. 28, 2026) ................................................................ 17

PricewaterhouseCoopers, *Stock-based compensation guide* (Dec. 31, 2025).................... 17

Pursuant to Federal Rules of Civil Procedure ("Rule") 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Nutex Health Inc. ("Nutex" or "Company"), and Thomas T. Vo, Jon C. Bates, and Warren Hosseinion (collectively, "Individual Defendants"; together with Nutex, "Defendants") respectfully move to dismiss the Amended Complaint ("AC") filed by Plaintiffs Gerald F. Cox and Shah Azman Bin Mohamad Ayub Khan ("Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs' deficient AC boils down to two categories of purportedly false and misleading statements. *First*, Plaintiffs challenge Nutex's disclosures surrounding its process and successful track record for recovering fair payments from out-of-network billing through an independent resolution process ("IDR") by its third-party vendor, HaloMD (the "IDR Allegations"). *Second*, Plaintiffs forge a highly technical challenge to Nutex's restatement of its year-end 2024 and first-quarter 2025 financial statements, which corrected a discrete classification error relating to certain stock-issuance obligations (the "Restatement Allegations"). As to either theory, Plaintiffs' conclusory allegations plainly fail to meet the heightened pleading standards under Rule 9(b) and the PSLRA and compel dismissal on several independent grounds.

As to the IDR Allegations, Plaintiffs hang their hats solely on a biased, short-seller report from Blue Orca (the "Blue Orca Report") which recounts publicly filed, unadjudicated lawsuits against HaloMD asserting improper business practices. Plaintiffs do not provide any basis for imputing knowledge of HaloMD's alleged malfeasance to any Individual Defendant. As in *Genesee Cty. Emps.' Ret. Sys. v. FirstCash Holdings, Inc.*, 667 F. Supp. 3d 295 (N.D. Tex. 2023), Plaintiffs' reliance on unadjudicated allegations in unrelated lawsuits (none of which implicate Nutex) to conclude that Nutex's IDR disclosures are somehow misleading does not state a claim. The Blue Orca Report is not material because it is based exclusively on publicly available information and, thus, did not alter the total mix of information available to investors. Further, the

Blue Orca Report was not corrective of any truth Nutex concealed from the market—it simply referenced public information.

As to the Restatement Allegations, Plaintiffs rely only upon Nutex's restated year-end 2024 and first-quarter 2025 financials to establish that Nutex's prior financials were false since they incorrectly classified certain stock-issuance obligations as equity. Fatally, as in *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936 (S.D. Tex. 2016) (Rosenthal, J.), Plaintiffs fail to allege particularized facts that each Individual Defendant knew of glaring irregularities or other red flags in such accounting treatment at the time the financials were originally issued. The obligations were clearly disclosed in the financial statements, including the accounting classification as equity, as audited by the Company's independent auditors. As Nutex disclosed, the subsequent reclassification of the obligations from equity to liabilities had no material effect on Nutex's key metrics, including revenue, liquidity, short-term and long-term debt, operating cash flow, adjusted EBITDA, or number of patient visits, and there is no indication that a reasonable investor considered it to be significant. On the contrary, the Company's stock price increased following both the announcement of the need for restatement and the restatement itself, undermining definitively the elements of scienter, materiality, and loss causation.

## NATURE AND STAGE OF THE PROCEEDINGS

This action was originally filed on August 22, 2025, alleging violations of Sections 10(b) and 20(a) against Defendants on behalf of all persons that purchased or otherwise acquired Nutex securities between August 8, 2024 and August 14, 2025. ECF 1. On November 19, 2025, the Court appointed Plaintiffs Cox and Khan as Co-Lead Plaintiffs. ECF 31. Plaintiffs filed their AC on February 2, 2026, alleging violations of Sections 10(b) and 20(a) against Defendants on behalf of all persons that purchased or otherwise acquired Nutex securities between a shortened period of February 5, 2025 and August 14, 2025 (the "Proposed Class Period"). ECF 42.

- 2 -

## FACTUAL BACKGROUND[1]

### I.    Nutex and the Impact of the No Surprises Act.

Nutex is a health care management and operations company that owns, develops, and operates micro-hospitals, specialty hospitals, and hospital outpatient departments.  AC ¶ 1. Individual Defendant Vo serves as Nutex's Chief Executive Officer and Chairman of the Board, Individual Defendant Bates serves as Nutex's Chief Financial Officer, and Individual Defendant Hosseinion serves as Nutex's President and a director.  *Id.* at ¶¶ 19–21.

In December 2020, Congress passed the No Surprises Act ("NSA"), which took effect on January 1, 2022, to protect consumers from "surprise" balance billing (when an out-of-network provider charges a patient the difference between the provider's total billed amount and the insurer's allowed amount).  *Id.* at ¶ 27.  The NSA limits the amount an insured patient will pay for emergency services furnished by an out-of-network provider and requires insurers to reimburse out-of-network providers at a statutorily calculated out-of-network rate.  Ex. 1 at 8.[2]  The NSA also established an IDR process to determine out-of-network payment amounts between health plans and providers when open negotiations fail.  AC ¶ 27.  During this process, the provider and health plan each submit a proposed payment amount, as well as other information supporting their position, to a certified independent dispute resolution entity ("CIDRE"), a ***neutral*** arbitrator.  *Id.* at ¶ 28.  The arbitrator selects the payment amount, considering, among other factors, the

---

[1] Only the AC's well-pleaded factual allegations are assumed true for purposes of this Motion.

[2] Pursuant to Local Rule 7.7, materials cited herein as "Ex. __" are attached to the Declaration of Roger B. Cowie filed contemporaneously herewith in support of the Motion.  These documents are referenced in the AC, publicly available, and/or otherwise judicially noticeable, and, thus, the Court may properly consider them.  *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (court permitted to rely on "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Fener v. Belo Corp.*, 513 F. Supp. 2d 733, 737 n.2 (N.D. Tex. 2007) (court can consider "SEC filings, transcripts of press releases and conference calls, [and] a stock price chart" on motion to dismiss).

qualifying payment amount ("QPA"), which is the median contract rate for similar specialties in same or similar geographic markets. *Id.* Nutex has warned that the IDR process requires extensive administrative time, delays collections, and is an expensive (but necessary) endeavor for providers like Nutex to ensure fair payment for their services. Ex. 1 at 8–9.

In Nutex's experience, insurers often offer to pay an amount lower than the QPA without regard for other information relevant to the claim, which forces Nutex to appeal through the IDR process to recover fair payment. *Id.* at 8. After the NSA became effective, Nutex's average payment by insurers of patient claims for emergency services declined by around 30%. Ex. 2 at 7. This experience was not unique to Nutex—according to a membership survey conducted by the Emergency Department Physician Management Association in February 2023, in more than 90% of claims surveyed, the average claim payment declined by 32% per emergency room visit post-NSA. *Id.* In 2022, Nutex submitted 28,000 cases for IDR open negotiations, and in 2023, it submitted 90,000. *Id.* The non-binding open negotiation process required significant internal resources and resulted in only around a 10% increase in collections, so Nutex pivoted to the binding IDR arbitration process around July 2024. AC ¶ 45.

## II.    Nutex Engages Third-Party IDR Vendor, HaloMD.

In July 2024, Nutex engaged HaloMD, a third-party vendor, to outsource assistance with its challenges to underpaid out-of-network claims, in large part due to the highly complex submission process. Ex. 3 at Item 8.01. Nutex selected HaloMD because it was a healthcare billing expert and consulting firm specializing in NSA-compliant and state regulation-compliant IDR processes. *Id.* Under this engagement, HaloMD, using a "proprietary data driven process," submits the required documentation through the IDR portal and determines the appropriate offer amount on Nutex's behalf. *Id.* at 6–7. Nutex has no contractual right to access or audit HaloMD's

proprietary data or documents prepared and submitted for arbitration, such as petitions, position statements, methodology formulas, payment demand letters, and arbitration briefs.  Ex. 4 at 17.

On February 5, 2025 (the start of the Proposed Class Period), Nutex announced that during the fourth quarter of 2024, it had submitted between 60–70% of its billable visits to arbitration each month, achieving an arbitration success rate in excess of 80%.  AC ¶ 86.  Nutex believed these efforts "resulted in equitable payments" that were "more in line with a fair market rate."  *Id.* at ¶ 89.  While reporting on this successful track record, Nutex warned:

> The Company cannot predict whether arbitration successes and claim recovery will continue at current levels.  Any significant revisions to the federal arbitration process may result in a substantial decrease in claim amounts recovered in the future.  In addition, Nutex Health is unable to predict future regulatory changes, evolving arbitration practices, and payer responses to ongoing enforcement of the NSA, all of which may have an adverse impact on the Company's ability to recover on its claims.

*Id.* at ¶ 86.

On April 7, 2025, Nutex and HaloMD participated in a webinar wherein panelists disclosed that Nutex and HaloMD's partnership began in July 2024.  *Id.* at ¶¶ 100–01.[3]  Nutex explained that it strives to have financial stability long term and that it believes utilizing the IDR process and HaloMD will help maintain that financial stability.  AC ¶ 43.  But, as Nutex also has warned, "[t]here are several factors which could cause actual plans and results to differ materially from those expressed or implied in forward-looking statements" such as "uncertainties in the amounts, timing and process of reimbursements by third-party payors and individuals."  Ex. 2 at i.

For the first quarter of 2025, as compared to the same period in 2024, the IDR process resulted in a roughly $105 million increase in revenue, which amounted to 73.1% of the

---

[3] The webinar, referenced and quoted in the AC, *see supra* at n.2, was posted the next day to YouTube. *See* "Becker's Healthcare Webinar: Navigating Headwinds and Tailwinds in IDR under NSA," available at https://www.youtube.com/watch?v=g2udecJ21bI&t=16s.

Company's overall revenue increase.  AC ¶¶ 103, 105, 111.  Reflecting on its arbitration success, as of May 13, 2025, Nutex stated it was "seeing more consistent financial results stemming from a combination of volume growth and operational efficiency, with more fair and reasonable payments from the arbitration process."  *Id.* at ¶¶ 103, 105.

On May 28, 2025, the Center for Medicare and Medicaid Services ("CMS") posted industrywide results for the third and fourth quarters of 2024, which provided details about provider claims and arbitration results.[4]  HaloMD's success rates were not unique; providers prevailed significantly more than insurance agencies.  Ex. 3 at Item 8.01 (of disputes submitted by providers, 85% "were decided in favor of the provider (the higher offer)"); *supra* at n.3 (webinar citing CMS data which reports providers win 86% of the time, up from 84% previously).

### III.    The Blue Orca Report and Litigation Against HaloMD and Other IDR Vendors.

On July 22, 2025, Blue Orca—an indisputably biased short seller—posted an article about Nutex.  Ex. 5 at 1 ("We are short sellers.  We are biased."); *id.* at 25 ("[W]e will make money if the price of Nutex stock declines.").  Relying exclusively on publicly available information, Blue Orca disclaimed any representation about the accuracy of its report.  *Id.* at 25–26 ("[A]ll such information is presented 'as is,' without warranty of any kind . . .  [Blue Orca] makes no representation . . . as to the accuracy, timeliness, or completeness of any such information or with regard to the results to be obtained from its use.").  Plaintiffs admit that "Blue Orca researched public filings" and do not cite to any non-public information from the Blue Orca Report.  AC ¶ 49.

---

[4] *See Federal IDR Tables for Q4 2024*, Cntr for Medicare & Medicaid Servs., available at https://www.cms.gov/nosurprises/policies-and-resources/reports.  These reports identify HaloMD as the "submitting agent" for Nutex.  The Court may take judicial notice of CMS data, as posted on an official government website.  *Kew v. Bank of Am., N.A.*, No. 11-CV-2824, 2012 WL 1414978, at *3 n.1 (S.D. Tex. Apr. 23, 2012) (Rosenthal, J.).  This CMS data also is referenced in the AC at paragraph 49.  *See supra* at n.2.

Blue Orca reported that, according to CMS data, Nutex is a "major HaloMD client" (with around 14,000 submissions in Q4 2024) and that HaloMD "achieved remarkable results" for Nutex. Ex. 5. Citing to public lawsuits filed against HaloMD as early as May 2025,[5] it also claimed that HaloMD "achieved dramatically lucrative results" by engaging in "a coordinated fraudulent scheme to steal millions of dollars from insurance companies." *Id.* at 1–2; AC ¶ 50. HaloMD submitted over 85,000 *total* claims in Q4 2024 for its clients; Nutex only accounted for 16% of them.[6] In total, HaloMD submitted 18% of all claims for Q4 2024 and was in line with other vendors' and/or providers' submissions—*e.g.*, Radiology Partners and Team Health submitted 15% and 10% of total claims, respectively. *Id.*

In these lawsuits—none of which allege any misconduct by Nutex—HaloMD has vigorously denied the claims brought against it and filed motions to dismiss, which are pending now before the courts. *See, e.g.*, *Blue Cross Blue Shield Healthcare Plan of Ga., Inc. v. HaloMD, Inc.*, No. 25-CV-02919, ECF 47 (N.D. Ga. Sept. 19, 2025); *Cmty. Ins. Co. v. HaloMD, LLC*, No. 25-CV-00388, ECF 45 (S.D. Ohio Nov. 20, 2025); *Anthem Blue Cross Life & Health Ins. Co. v. HaloMD, LLC*, No. 25-CV-01467, ECF 76 (C.D. Cal. Dec. 12, 2025); *Blue Cross Blue Shield of Tex. v. HaloMD, LLC*, No. 25-CV-00132, ECF 15 (E.D. Tex. Nov. 18, 2025).[7] HaloMD contends that the actions are a "wholly meritless" attempt by insurance companies "to challenge the [NSA]," *Blue Cross Blue Shield Healthcare Plan of Ga., Inc.*, ECF 47 at 1, and "impose

---

[5] On June 4, 2025—shortly after the first lawsuit was filed, and more than a month before the Blue Orca Report published—HaloMD publicly vowed to "fight to the full extent of the law" against claims, which HaloMD described as "baseless." Ex. 6 at 1.

[6] *See Federal IDR Supplemental Tables for Q4 2024*, Cntr for Medicare & Medicaid Servs., available at https://www.cms.gov/nosurprises/policies-and-resources/reports.

[7] The Court may judicially notice "document[s] filed in another court . . . to establish the fact of such litigation and related filings." *Ferguson v. Extraco Mortg. Co.*, 264 F. App'x. 351, 352 (5th Cir. 2007). These lawsuits also were referenced in the AC. *See supra* at n.2.

business-debilitating litigation costs on HaloMD, intimidate health providers, and chill the use of the IDR process," *Anthem Blue Cross Life & Health Ins. Co.*, ECF 76 at 10.  Plaintiffs also ignore that the same or similar suits are being filed ***industrywide***, not just against HaloMD.  There are at least five other pending lawsuits brought by insurance providers against other IDR vendors and/or providers,[8] highlighting the complexity and uncertainty with the NSA and IDR process and/or the unsuccessful results by various insurers.[9]

Two days after the Blue Orca Report's publication, Nutex responded that it strongly disagreed with its allegations and that it intended to further address the allegations in its next public filing.  Ex. 7 at 1.  Contrary to Plaintiffs' assertions, on August 21, 2025, Nutex addressed its relationship with HaloMD at length, including a detailed analysis of the IDR process and how HaloMD assists Nutex with it.  Ex. 3 at Item 8.01.  Nutex explained that the "short seller report was largely based on allegations made against HaloMD and certain providers in lawsuits," and that Nutex is not a party to these lawsuits and cannot predict their outcomes.  *Id.*

## IV.    Nutex's Restatement of Year-End 2024 and First-Quarter 2025 Financials.

Following Nutex's merger with Clinigence Holdings, Inc. on April 1, 2022, Nutex Health Holdco LLC entered into certain contribution agreements with holders of equity interests of subsidiaries and affiliates pursuant to which such holders agreed to contribute certain equity

---

[8] *Aetna Health Inc. v. Radiology Partners, Inc.*, No. 24-CV-01343 (M.D. Fla. Dec. 23, 2024); *Anthem Blue Cross Life & Health Ins. Co. v. Prime Healthcare Servs.–St. Francis, LLC*, No. 26-CV-00023 (C.D. Cal. Jan. 5, 2026); *Anthem Health Plans of Va., Inc. v. AGS Health, Inc.*, No. 25-CV-00804 (W.D. Va. Nov. 5, 2025); *Blue Cross Blue Shield of Tex. v. Zotec Partners, LLC*, No. 25-CV-00186 (E.D. Tex. Dec. 18, 2025); *UnitedHealthCare Servs., Inc. v. Team Health Holdings, Inc.*, No. 21-CV-00364 (E.D. Tenn. Oct. 27, 2021).

[9] In its NSA data analysis report for 2024, Congress described, among other things, the complexity in determining whether a dispute is eligible for the IDR process.  *See No Surprises Act (NSA) Independent Dispute Resolution (IDR) Process Data Analysis for 2024*, available at https://www.congress.gov/crs-product/R48738.

interests in the subsidiaries and affiliates to Nutex Health Holdco LLC in exchange for specified equity interests in Nutex Health Holdco LLC. Ex. 8 at 8. Under the terms of those agreements, contributing owners of "under-construction hospitals" and "ramping hospitals" were eligible to receive a one-time additional issuance of Company common stock. *Id.* Each stock issuance would vest within 24 months from the opening date of the applicable facility, with the valuation to be based on trailing 12-month operating results determined at the end of the 24-month period. *Id.* at 74–75. Nutex accrued the compensation cost of these obligations based on the probable outcome of certain performance conditions. *Id.*

Nutex disclosed the existence of, and recognized the resulting expense of, these stock-issuance obligations in its year-end 2024 and first-quarter 2025 financial statements. Ex. 8 at 74–75 ("Note 12–Stock-based compensation"); Ex. 9 at 16–17 ("Note 10–Stock-based compensation"). It classified the obligations as equity rather than liabilities. Ex. 8 at 55 (recognizing $16.6M in "stock-based compensation" described in note 12 as equity); Ex. 9 at 6 (recognizing $36M in "stock-based compensation" described in note 10 as equity). The financials were audited by Nutex's independent auditor, Marcum LLP, who opined that they "present fairly, in all material respects, the financial position of the Company as of December 31, 2024. . . in conformity with accounting principles generally accepted in the United States." Ex. 8 at 50.

On November 1, 2024, CBIZ CPAs P.C. ("CBIZ") acquired the attest business of Marcum LLP and, as a result, on April 25, 2025, Marcum LLP resigned and CBIZ was appointed Nutex's auditor. Ex. 10 at Item 4.01. Three weeks later, Nutex decided to dismiss CBIZ and appoint Grant Thornton LLP as its new auditor, following a "competitive selection process." Ex. 11 at Item 4.01. In connection with these changes, Marcum LLP/CBIZ did not express disagreement with Nutex over any material accounting issues. *Id.*

On August 20, 2025, Nutex announced for the first time that its stock-issuance obligations associated with under-construction and ramping hospitals should be restated as liabilities—and not equity—in its year-end 2024 and first-quarter 2025 financial statements.  Ex. 3 at Ex. 99.1.[10] Nutex further announced that the adjustments related to these obligations are "non-cash" in nature and have no effect on key financial statement line items, such as its revenue, gross profit, liquidity, working capital, short-term and long-term debt, operating cash flow, adjusted EBITDA, or number of patient visits.  *Id.*  The Company disclosed in its related Form 8-K that the restatement was expected to increase liabilities and decrease equity by $10 million to $20 million, and it warned that any other related financial information covering these periods should no longer be relied upon. *Id.*  Nutex also disclosed that, as a result of this change in treatment, management determined there was a material weakness in the design and operating effectiveness of internal controls over financial reporting as of and for the periods ended December 31, 2024 and March 31, 2025 and engaged a third party accounting firm to assist in the proper design, implementation, and testing of these controls.  *Id.*  After this announcement, Nutex's stock price increased 3.7%, from $92.75 on August 20 to $96.18 on August 21.  Ex. 12 at 3.[11]

Less than three months later, on November 18, 2025, Nutex issued restated financials to reclassify the stock-issuance obligations as liabilities rather than equity in accordance with Accounting Standards Codification ("ASC") 718 and 480.[12]  Ex. 13 at i; Ex. 14 at 1.  The

---

[10] While Plaintiffs allege this announcement was made on August 21 in Nutex's Form 8-K, *see* AC ¶ 61, the announcement was actually made via Nutex's August 20 press release, Ex. 3 at Ex. 99.1.  The Form 8-K accompanying the announcement was submitted to the SEC on August 20 and publicly available pre-market opening on August 21.  Ex. 3 at Filing Detail page.

[11] The Court may properly take judicial notice of Nutex's historic stock prices.  *Schweitzer v. Invs. Comm. of Phillips 66 Savings Plan*, 960 F.3d 190, 193 n.3 (5th Cir. 2020).

[12] ASC 718 provides that share-based payment awards may be classified as either equity or liabilities, considering classification requirements established by ASC 480.  ASC 718-30-05-01.

restatement for year-end 2024 resulted in $16.356 million restated as liabilities, increasing total liabilities by 2.9%, while total equity correspondingly decreased by 6.6%, and net income decreased by 0.5%. Ex. 13 at ii. The restatement for first-quarter 2025 resulted in $20.739 million restated as liabilities, increasing total liabilities by 4%, while total equity correspondingly decreased by 7.1%, and net income increased by 14.9%.[13] Ex. 14 at 1. Nutex also filed its second-quarter 2025 financials on the same day. The Company's closing stock price increased by 13.1%, from $99.20 on November 18, 2025—immediately before the announcement—to $112.19 on November 19, 2025—immediately after it. Ex. 12 at 2.

## V.    Plaintiffs' Conclusory Allegations of Materially False and Misleading Statements.

The basis for the AC's claims can be grouped into two categories: (1) IDR Allegations, and (2) Restatement Allegations. AC ¶¶ 86–113. *First*, Plaintiffs allege Nutex made materially false and misleading statements when it disclosed its successful IDR results in a February 2, 2025 press release, 2024 Form 10-K, April 1, 2025 earnings call, and April 7, 2025 webinar. *Id.* at ¶ 86 ("Since implementing its arbitration strategy, the Company has reached its goal of submitting between 60–70% of its billable visits to arbitration each month, achieving an arbitration success rate in excess of 80% during the fourth quarter of 2024."); *id.* at ¶¶ 91, 97, 100 (same). Plaintiffs claim these disclosures are misleading because the arbitration results were fraudulently obtained by HaloMD, according to disputed allegations in lawsuits pending against HaloMD and the Blue

---

ASC 480 establishes standards for how an issuer classifies and measures in its financial statements certain financial instruments with characteristics of both liabilities and equity, depending on the obligation of the issuer. ASC 480-10-05-1.

[13] Plaintiffs claim the financials understated *current* liabilities by approximately 9.5% for year-end 2024 and approximately 11% for first-quarter 2025. *See* AC ¶¶ 9, 95, 109. Where the stock-based compensation at issue here can easily be satisfied by the Company issuing stock (in other words, it does not require cash on hand), the impact to only *current* liabilities—rather than the *total* liabilities—is not as meaningful.

Orca Report's recitation of the same. *Id.* at ¶¶ 87–88, 90, 92–93, 98–99, 102, 104, 106–07, 112–13. *Second*, Plaintiffs allege Nutex's year-end 2024 Form 10-K and first-quarter 2025 Form 10-Q contained materially false financial information because Nutex's balance sheet incorrectly classified Nutex's accrued stock-based compensation obligations as equity, but later recategorized them as liabilities in Nutex's restatement. *Id.* at ¶¶ 94–95, 108–09.

## STATEMENT OF ISSUES

1. **Whether Plaintiffs' Section 10(b) claim should be dismissed.** To state a Section 10(b) claim, "a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 429 (5th Cir. 2019) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)). To survive a motion to dismiss, the claim must meet Rule 9(b)'s and the PSLRA's heightened pleading standards. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006).

    A. **Whether Plaintiffs failed to plead scienter.** The PSLRA requires Plaintiffs allege particularized facts raising a strong inference that ***each*** Defendant acted with the intent "to deceive, manipulate, or defraud" or severe recklessness. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). Plaintiffs cannot meet that burden "without stating any facts showing that defendant's alleged statement was belied by his actual knowledge of contradictory facts or by facts so obvious that the defendant had to be aware of it." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 376 (S.D. Tex. 2011), *aff'd sub nom. Harold Roucher Tr. U/A DTD 9/21/72 v. Nocella*, 464 F. App'x 334 (5th Cir. 2012). Plaintiffs must allege "what each [Defendant] knew, who specifically knew it, and when they learned it." *Zishka* v. *Am. Pad & Paper Co.*, No. 98-CV-0660, 2000 WL 1310529, at *3 (N.D. Tex. Sept. 13, 2000). Severe recklessness requires "an extreme departure from the standards of ordinary care." *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 533 (5th Cir. 2008).

    B. **Whether Plaintiffs failed to plead an actionable material misstatement.** A complaint must identify each statement that is alleged to be misleading and the reason why it is misleading, and it must state ***with particularity*** the facts on which the allegations are based. 15 U.S.C. § 78u-4(b)(1); *see also Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002). "To be actionable, a misrepresentation of a fact, or an omission of a fact, must be material." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d at 375. "The misrepresentation of a fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in making an investment decision." *Id.*

- 12 -

C. **Whether Plaintiffs failed to plead loss causation.**  Loss causation requires (1) "identifying a 'corrective disclosure' (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud)," (2) causally connecting the stock drop to that corrective disclosure, and (3) "eliminating other possible explanations for this price drop." *Pub. Emps. Ret. Sys. of Miss., P.R. Teachers Ret. Sys. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014).

2. **Whether Plaintiffs' Section 20(a) claim should be dismissed.**  Absent a primary violation, control person liability under Section 20(a) cannot exist.  *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 383 (5th Cir. 2004).

## ARGUMENT

## I. PLAINTIFFS' SECTION 10(b) CLAIM SHOULD BE DISMISSED

### A. The Complaint Fails to Adequately Plead Scienter.

#### 1. Group Pleading and Conclusory Allegations Cannot Establish Scienter.

Plaintiffs cannot rely on "group pleading" or conclusory allegations; they must allege particularized facts showing that *each defendant* acted with the requisite state of mind as to *each* statement or omission.  *Southland Sec. Corp.*, 365 F.3d at 364–65 ("PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud."); *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016) (rejecting group pleading because Fifth Circuit "focuses on the state of mind of the corporate officials who make, issue, or approve the statement"); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1019 (5th Cir. 1996) ("rote conclusory allegations that the defendants 'knowingly did this' or 'recklessly did that' fail to meet the heightened pleading requirements of Rule 9(b)").  The AC is devoid of any individualized factual allegations that the Individual Defendants made any misrepresentations with the requisite state of mind.  Instead, Plaintiffs summarily lump the Individual Defendants together and litter the AC with generalized conclusions and baseless conjecture that "Defendants" *must* have inquired into HaloMD's process,

- 13 -

AC ¶ 118, Nutex concealed the value of its liabilities through improper accounting, *id.* at ¶¶ 85, 136, 160, and "Defendants" acted intentionally or deliberately recklessly when reporting Nutex's financial earnings, *id.* at ¶¶ 131, 137. It does not state a claim. *Shaw Grp., Inc.*, 537 F.3d at 533.[14]

### 2. The IDR Allegations Are Insufficient to Support a Scienter Inference.

Plaintiffs' IDR Allegations fall short of the PSLRA's strict pleading requirements. Plaintiffs present allegations of HaloMD's fraudulent business practices made in the Blue Orca Report based on other lawsuits (to which neither Plaintiffs nor Defendants are parties) but do nothing whatsoever to connect those allegations to the state of mind of any Individual Defendant. AC ¶¶ 115–21. Plaintiffs' sole attempt at pleading scienter connected to the IDR Allegations is that, allegedly, "[g]iven HaloMD's dramatic impact on Nutex's operations and earnings, Defendants either inquired into the tactics HaloMD was using to achieve the results it was achieving or deliberately avoided inquiring as to the tactics HaloMD was using." AC ¶ 118. This conclusory allegation, and impermissible group pleading, does not support an inference of scienter, particularly where there is no indication that any Individual Defendant—or anyone at Nutex, for that matter—participated in, or was aware of, HaloMD's proprietary process in submitting IDR arbitrations.[15] Such conclusory allegation also ignores the fact that HaloMD's successful IDR

---

[14] To the extent Plaintiffs rely on the Individual Defendants' respective positions at Nutex, AC ¶¶ 19–21, and their signature on Nutex's SEC filings, *id.* at ¶¶ 91, 105, as circumstantial evidence that they "***must have been aware***" of Nutex's purported fraud, it is unavailing. *See In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d at 376 ("scienter may not rest on the inference that a defendant must have been aware of the misstatements based on his positions with the company"); *see also Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 693 (S.D. Tex. 2013) (Rosenthal, J.).

[15] In fact, HaloMD's process is proprietary and Nutex does not have access to the details about HaloMD's submissions. *See* Ex 3 at 5 ("using a proprietary data driven process, HaloMD submits the required documentation to the CIDRE through the federal portal"); *id.* at 6 ("HaloMD, using proprietary data analysis and benchmarking, determines the appropriate offer amount on our behalf."); Ex. 4 at 17 ("Nutex has no contractual right to access or audit HaloMD's proprietary benchmarking data or documents prepared and submitted by HaloMD to the IDREs on behalf of the Company[.]").

results were not abnormal—they were consistent with industrywide results of other providers and vendors that participated in the neutral IDR arbitration process. *Supra* at 6.

These lawsuits are merely unadjudicated allegations that HaloMD has vigorously disputed and, thus, do not state a claim. *See, e.g.*, *Genesee Cty. Emps.' Ret. Sys.*, 667 F. Supp. 3d at 331 (finding federal securities "claim entirely predicated on early-stage and unconfirmed allegations in another civil case offends the very notion of justice that our system is founded on"); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 721 (W.D. Tex. 2010) (lawsuit settlements insufficient to support scienter without indication of individual defendants' awareness); *Teamsters Local 456 Pension Fund v. Universal Health Servs.*, 396 F. Supp. 3d 413, 468 (E.D. Pa. 2019) (existence of six pending *qui tam* lawsuits did not establish scienter where "allegations made in those suits remain unsubstantiated").

### 3. The Restatement Allegations Are Insufficient to Support a Scienter Inference.

To establish scienter in connection with Nutex's restatement, Plaintiffs point only to alleged GAAP violations and internal control weaknesses, auditor changes, and Messrs. Vo's and Bates' SOX certifications, which do not support a claim—alone or together. AC ¶¶ 122–37.[16]

> a. *GAAP violations and internal control weaknesses do not support scienter*.

Under well-established Fifth Circuit law, accounting restatements "alone cannot create a strong inference of scienter." *Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 181, 186–87 (5th Cir. 2019) (affirming no scienter when company restated over two years'-worth of financials that overstated pre-tax income by $87 million); *see also In re Integrated Elec. Servs., Inc. Sec.*

---

[16] Plaintiffs do not—and cannot—allege Defendant Hosseinion signed any SOX certification for the financial statements at issue in this action.

*Litig.*, No. 04-CV-3342, 2006 WL 54021, at *2–3 (S.D. Tex. Jan. 10, 2006) (no scienter when company restated thirty months-worth of financials that reduced company's net income by 14%), *aff'd sub nom. Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546 (5th Cir. 2007). "The party must know that it is publishing materially false information, or must be severely reckless in publishing such information." *Abrams*, 292 F.3d at 432.

Courts in the Fifth Circuit infer scienter from accounting errors "only when other factors strongly support the inference," such as "the magnitude, pervasiveness, and repetition of the errors; the simplicity and obviousness of the misapplied rules; and the defendant's apparent motives for misapplying these rules." *Schott*, 211 F. Supp. 3d at 953. For example, in *Schott*, in more than a year's-worth of financial statements, the company overstated 2014 net revenue by 25% and first-quarter 2015 revenue as $3.27 million when it was nearly revenue-neutral. *Id.* at 954–56. The court found that, although the magnitude of the error was significant, the plaintiff did not allege "any media reports or internal company documents" that showed defendants knew or recklessly disregarded that the financials contained mistakes or that the company "violated rules that were so clear and obvious as to make the company's officers either knowingly deceptive or severely reckless in certifying their auditor's figures on the SEC filings." *Id.*

Here, the magnitude of the restatement was not significant or pervasive, affecting only one year's and one quarter's worth of financials; the financials understated liabilities by 2.9% for year-end 2024 and 4% for first-quarter 2025. *See supra* at 11. But the restatement had no material effect on performance, liquidity, or operating cash flow, and resulted in an ***increase*** in net income. *See infra* at § I.B.2. As in *Schott*, Plaintiffs fail to allege any public or internal document that shows Defendants knew or were severely reckless in not knowing the financials contained a mistake or that GAAP rules ASC 718 and 480 are so clear and obvious that their mere violation

- 16 -

supports an inference of scienter.   Plaintiffs contend that GAAP rules ASC 718 and 480 "objective[ly]" require treating Nutex's obligation to issue certain stock-based compensation as a "liability" and not "equity," and that Nutex "inexplicably" misapplied them.  AC ¶¶ 84, 131.[17]  On the contrary, "[a]pplying GAAP often involves *subjective* determinations," as here.  *Owens v. Jastrow*, 789 F.3d 529, 543 (5th Cir. 2015) (emphasis added).

For example, in *May v. KushCo Holdings, Inc.*, the court rejected the plaintiffs' attempts to characterize ASC 480 as "simple and straightforward" as it applied to a classification of certain contingent stock and found scienter was not adequately pled.  No. 19-CV-00798, 2020 WL 6587533, at *1, 5–6 (C.D. Cal. Sept. 25, 2020); *see also City of Atlanta Police Officers' Pension Plan v. Celsius Holdings, Inc.*, No. 22-80418, 2023 WL 1998174, at *11 (S.D. Fla. Feb. 13, 2023) (finding plaintiffs failed to satisfy their "burden of showing that ASC [718] is so clear that it should create an inference of scienter"), *report and recommendation adopted*, 2023 WL 2601816 (S.D. Fla. Mar. 22, 2023).  Indeed, there is no bright-line rule for equity versus liability accounting in this context of stock-based compensation; it is complex and debate over proper interpretation is commonplace.[18]  And Plaintiffs have alleged no motive for misapplying the rules, as the stock-issuance obligation was clearly disclosed in the original financials and the restated financials did not impact "key metrics," indeed they caused net income to increase.  At best, Plaintiffs have

---

[17] There can be no inference of scienter when Plaintiffs allege that Nutex "inexplicably" misapplied the stock-based compensation as equity instead of liability.  To adequately plead scienter, by definition, Plaintiffs must be able to explain Nutex's intent or motive for the misapplication.  *See Shaw Grp., Inc.*, 537 F.3d at 543 ("Merely alleging facts that lead to a strained and tenuous inference of motive is insufficient to satisfy the pleading requirement.").

[18] *See, e.g.*, PricewaterhouseCoopers, *Business combinations and noncontrolling interests guide* (Feb. 28, 2026) (383-page guide noting obligation to pay contingent consideration should be classified as liability *or* shareholder equity); PricewaterhouseCoopers, *Stock-based compensation guide* (Dec. 31, 2025) (266-page guide on characteristics and obligations of stock-based compensation); KPMG LLP, *Share-based payment handbook* (2025) (500-page handbook on share-based payment accounting).

alleged Defendants "were negligent in relying on the auditors" in preparing Nutex's financial statements, which would still be insufficient to allege scienter. *Schott*, 211 F. Supp. 3d at 955–56.

Plaintiffs ask this Court to construe an acknowledgement of error as an admission of securities fraud. This cannot be the law, or companies would be left with a disincentive to correct errors where necessary. *See Phillips v. Harvest Nat. Res., Inc.*, No. 13-CV-801, 2016 WL 4523849, at *3 (S.D. Tex. Aug. 25, 2016) ("Accounting mistakes without accompanying false statements or other aggravating circumstances are not enough to infer malice. Corporations should be encouraged to revise and restate."). Simply, Nutex's disclosure of an accounting error and related internal control weakness was no admission of fraud.

   b.   *Auditor changes and SOX certifications do not support scienter*.

Auditor changes and SOX certifications, alone, are insufficient to support an inference of scienter. *Lovelace*, 78 F.3d at 1020–21 (auditor change for "difference in judgment about [GAAP] principles" did not establish scienter); *In re GOL Linhas Aereas Inteligentes S.A. Sec. Litig.*, 598 F. Supp. 3d 63, 72 (E.D.N.Y. 2022) (declining to infer scienter based on auditor change); *Schott*, 211 F. Supp. 3d at 953 ("Correcting accounting errors in SEC filings or a defendant's signature on a SOX certification cannot by themselves support a strong inference of scienter."). Here, Plaintiffs allege only that Marcum LLP resigned as Nutex's auditor, and that Nutex subsequently replaced its next auditor with Grant Thornton LLP. AC ¶¶ 133–34. This merely establishes that auditor changes occurred; it does not in any respect provide a culpable explanation as to any Defendant for the auditor change. *Lovelace*, 78 F.3d at 1020–21 (no scienter where company's auditors came to different conclusions over accounting application).[19]

---

[19] This is particularly true where Plaintiffs completely ignore Nutex's clear disclosures regarding its history and change in auditors. *See supra* at § IV.

Plaintiffs' allegations that Defendants acted with scienter by Messrs. Vo and Bates signing SOX certifications do not fare better.  AC ¶¶ 132, 135–37.  The fact that Nutex changed auditors and certain Individual Defendants signed SOX certifications does not permit the Court to plausibly infer that any Defendant was on notice of, and ignored, any red flags.  *Schott*, 211 F. Supp. 3d at 954, 956 (no scienter where plaintiffs failed to allege defendants "knew of or recklessly disregarded clear evidence that the accounting used misrepresented the company's financials"); *In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 866 (S.D. Tex. 2016) (SOX certifications could not establish scienter where no allegation defendants "knew of or recklessly disregarded any weaknesses in [company's] internal controls" when they signed them).

### 4.    Confidential Witnesses and Internal Reports Are Absent From the AC.

"Pleading true facts generally requires that the plaintiff cite contemporaneous sources rather than rely on conjecture based on subsequent events.  This is traditionally done by relying on confidential witnesses or documentary evidence such as internal memoranda to establish the reason(s) why the statement or omission was false or misleading at the time it was made."  *In re Ocugen, Inc. Sec. Litig.*, 659 F. Supp. 3d 572, 589 (E.D. Pa. 2023), *aff'd*, No. 23-1570, 2024 WL 1209513 (3d Cir. Mar. 21, 2024); *see also Burback v. Oblon*, No. 20-CV-946, 2021 WL 4477607, at *7 (E.D. Tex. Sept. 30, 2021) (scienter allegations insufficient where based on information and belief and complaint did not allege particularized facts upon which plaintiffs' belief of defendant's knowledge was formed), *aff'd sub nom. Burback v. Brock*, No. 22-40609, 2023 WL 4532803 (5th Cir. July 13, 2023).  Contributing to their deficient scienter puzzle, Plaintiffs have not alleged any internal document or confidential source that demonstrates red flags in Nutex's accounting or internal controls or that demonstrates any Individual Defendant participated in or was aware of HaloMD's purportedly improper IDR process.  *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, No. 10-CV-2835, 2011 WL 4357368, at *1, 18 (S.D.N.Y. Sept. 19, 2011)

("unlike many securities class actions, plaintiffs do not rely on a single confidential witness or internal document in order to support their allegations," thus, failing to show "defendants' actual understanding" of disputed financial metric); *Abrams*, 292 F.3d at 431–32 (scienter inadequate where plaintiffs failed to allege defendants knew of purported internal control problems and relied on "unsupported general claim about the existence of confidential corporate reports").

### 5.    The Non-Culpable Inferences Outweigh the Culpable Ones.

In conducting the scienter inquiry, the Court must "consider plausible, nonculpable explanations for the defendant's conduct" and weigh them against culpable inferences alleged by Plaintiffs. *Tellabs*, 551 U.S. at 323–24.

With respect to the IDR Allegations, nonculpable inferences loom large over any suggestion Defendants acted with scienter where Nutex disclosed its partnership with HaloMD, which Plaintiffs conveniently ignore, *see infra* at § I.C.1, and warned that future arbitration results may be affected by "regulatory changes, evolving arbitration practices, and payer responses," AC ¶ 86.  All of these circumstances were unpredictable and cannot form the basis for a claim.  *See Neiman v. Bulmahn*, 854 F.3d 741, 750 (5th Cir. 2017) (disclosures "belie[d] a claim of scienter" as they "made little sense" with plaintiff's concealment theory); *Owens*, 789 F.3d at 541 ("Additional transparency . . . negates the inference of scienter.").  Indeed, such disclosures, and other publicly available information, allowed Blue Orca to compile its report. *See infra* at § I.C.1.

The fate of the Restatement Allegations is the same. *First*, Nutex explicitly disclosed its obligation to issue certain stock-based compensation to former hospital owners; it was merely recorded in the equity section of the balance sheet rather than the liabilities section. *See supra* at 9. *Second*, Marcum LLP audited Nutex's financials and opined that its accounting treatment was in accordance with GAAP, *see supra* at § IV, which "weighs heavily against scienter," *Mortensen v. AmeriCredit Corp.*, 123 F. Supp. 2d 1015, 1017 (N.D. Tex. 1999) (no scienter where plaintiffs

failed to allege company's independent auditor objected to or questioned accounting).  *Third*, in addition to the insignificant impact the restatement had on Nutex's "key metrics," *supra* at 10, Nutex's stock price increasing immediately after the August 20, 2025 announcement of the need for restatement and, again, immediately after the November 18, 2025 restatement, further undermines any culpable inference as Nutex did not benefit from misstating its financials.  *Fourth*, Plaintiffs' allegations (even if taken as true), at best, establish corporate mismanagement—not fraud.  *See Plaisance v. Schiller*, No. 17-CV-3741, 2019 WL 1205628, at *37 (S.D. Tex. Mar. 14, 2019) ("more plausible or at least as plausible to infer that . . . [defendant] negligently relied on [company's] accountants and auditors than to infer that he knowingly or recklessly disregarded the presence of glaring accounting irregularities or other red flags in [] financial statements").  *Fifth*, following discovery of the classification error and related internal control weakness, Defendants promptly issued a restatement and disclosed plans to improve controls, facts which "cut against Plaintiff[s] as they support a non-culpable inference" that Nutex was "attempt[ing] to improve its business to reduce the likelihood of another reporting error."  *Messner v. USA Techs., Inc.*, No. 15-CV-5427, 2016 WL 1466543, at *11 (E.D. Pa. Apr. 13, 2016); *see also In re CrowdStrike Holdings, Inc. Secs. Litig.*, No. 24-CV-857, 2026 WL 89682, at *21–22 (W.D. Tex. 2026) (more plausible inference was post-incident remedial measures were intended to improve product and business).

### 6.    Plaintiffs' Failure to Plead Motive Undermines a Finding of Scienter.

The Fifth Circuit recognizes that "motive and opportunity" allegations can "meaningfully enhance the strength of the inference of scienter."  *Goldstein v. MCI WorldCom*, 340 F.3d 238, 246 (5th Cir. 2003).  But the AC is devoid of any motive beyond generalized claims that "Defendants had both the motive and opportunity to commit fraud," AC ¶ 114, and that Nutex had to avoid delisting, *id.* at ¶ 119.  Courts regularly reject such motivations.  *See, e.g., Abrams*, 292

- 21 -

F.3d 424 at 434 (desire to raise capital, enhance incentive compensation, and sell stock at inflated price insufficient to support scienter); *Paxton v. Provention Bio, Inc.*, No. 21-11613, 2022 WL 3098236, at *17 (D.N.J. Aug. 4, 2022) (rejecting "motiv[e] of avoiding an event that would threaten the survival of a company" as "too generalized").  "Where, as here, the plaintiff has not alleged a clear motive for the alleged misstatements or omissions, the strength of [the] circumstantial evidence of scienter must be correspondingly greater."  *R2 Invs. LDC* v. *Phillips*, 401 F.3d 638, 644 (5th Cir. 2005).  Plaintiffs' attempt to plead scienter falls short, even without the requirement of a "correspondingly greater" showing.

### 7.     The AC Fails to Adequately Plead Nutex's Corporate Scienter.

Finally, because Plaintiffs have not sufficiently pled the Individual Defendants possessed scienter, Plaintiffs have necessarily failed to plead Nutex possessed corporate scienter.  *See Southland Sec. Corp.*, 365 F.3d at 366 (must plead scienter of "individual corporate official or officials" to plead scienter as to company); *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 818 (S.D. Tex. 2012) (scienter "must actually exist in the individual making . . . the misrepresentation, and may not simply be imputed to the corporation on general principles of agency").  The AC should be dismissed as it fails to adequately plead scienter as to any Defendant.

### B.     Plaintiffs Have Failed to Plead an Actionable Material Misstatement.

### 1.     The IDR Disclosures Do Not Constitute Materially False Statements.

Plaintiffs' theory regarding the IDR Allegations is puzzling, at best, since Plaintiffs do not—and cannot—contest that Nutex's statements regarding its IDR results are factually correct.[20]

---

[20] The IDR Allegations must be viewed with caution because they are based on a "biased" short seller who "will make money if the price of Nutex stock declines." Ex. 5 at 25. *See In re DraftKings Inc. Secs. Litig.*, 650 F. Supp. 3d 120, 154 (S.D.N.Y. 2023) (when "source for adverse factual allegations about a public issuer [is] a report by [a] short seller . . . these allegations must

AC ¶¶ 87–88, 90, 92–93, 98–99, 102, 104, 106–07, 112–13.   Rather, Plaintiffs contend that, because the process of obtaining successful arbitration results was purportedly handled by HaloMD improperly, the statements create a false impression that the results are sustainable and are, therefore, misleading.   *Id.*[21]   But the fact that third parties in other lawsuits have made unadjudicated allegations that HaloMD's IDR process is improper does not render Nutex's IDR disclosures misleading.   *See, e.g.*, *In re Am. Bus. Fin. Servs., Inc. Secs. Litig.*, 413 F. Supp. 2d 378, 398 (E.D. Pa. 2005) (dismissing action where plaintiffs argued "not that defendants' statements were false on their face, but that the information they contained was misleading" since defendants achieved financial results "by manipulating their delinquency ratios"); *In re Marsh & Mclennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 470 (S.D.N.Y. 2006) ("allegation that a corporation properly reported income that is alleged to have been, in part, improperly obtained is insufficient to impose Section 10(b) liability").   This is particularly true where Nutex's IDR disclosures were accompanied by a clear warning that Nutex "cannot predict whether arbitration successes and claim recovery will continue at current levels" and "is unable to predict future regulatory changes, evolving arbitration practices, and payer responses to ongoing enforcement of the NSA, all of which may have an adverse impact on the Company's ability to recover on its claims."   AC ¶ 86.

---

be considered with caution"); *Ng v. Berkeley Lights, Inc.*, No. 21-CV-09497, 2024 WL 695699, at *9 (N.D. Cal. Feb. 20, 2024) (cautioning of short seller's interest in defendant company's decline).

[21] To the extent that Plaintiffs' take the position that Defendants omitted material information, they have failed to meet the high burden set forth for omission-based claims.  Section 10(b) and Rule 10b-5(b) "do not create an affirmative duty to disclose any and all material information.  Disclosure is required . . . only when necessary 'to make [a] statement[] . . . not misleading.'"  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011).  Put another way, "[a] duty to disclose arises only where both the statement made is material, and the omitted fact is material to the statement in that it alters the meaning of the statement."  *Shaw Grp., Inc.*, 537 F.3d at 541.  Nothing in the AC suggests that HaloMD's document and offer submissions had anything to do with whether Nutex accurately reported the ***final*** arbitration results.  This is fatal to any omission claim.  *Id.* at 541 (not mentioning problems with business partner did not make disclosure of joint venture misleading where it "neither stated nor implied anything about" history of relationship).

- 23 -

It is not—and cannot be—the law that unadjudicated allegations in other lawsuits make an otherwise true statement, accompanied by a clear warning about future results, false or misleading. *See Genesee Cty. Emps.' Ret. Sys.*, 667 F. Supp. 3d at 33 ("it is an immensely powerful tool for a [party] to file a tenuous suit or hold a press conference and guarantee embroiling a company in complex shareholder suits and bad press for years"). And Defendants need not be bearish on Nutex's successful arbitration results—Nutex is "under no duty to cast its business in a pejorative, rather than a positive, light." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003).[22]

Further, information "considered in light of what was undisputedly publicly known, [i]s not material and thus not legally required to be disclosed." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015). Defendants' purported omission of unadjudicated HaloMD allegations cannot be material as already public and, thus, unable to alter the total mix of information for investors. *Infra* at § I.C.1; *see In re Progress Energy, Inc.*, 371 F. Supp. 2d 548, 552–53 (S.D.N.Y. 2005) ("the securities laws do not require disclosure of information that is publicly known").

### 2. The Accounting Classification of Nutex's Stock-Issuance Obligations Does Not Constitute a Materially False Statement.

Plaintiffs wrongly allege that Nutex's year-end 2024 and first-quarter 2025 financials are materially false and misleading simply because Nutex restated them to reclassify certain stock-issuance obligations from equity to liabilities. AC ¶¶ 62 n.4, 94–95, 108–09. Contrary to Plaintiffs' overblown allegations, accounting errors and restatements are not *per se* material. *See,*

---

[22] The Company's positive IDR disclosures are nonactionable corporate optimism. *See, e.g.*, AC ¶ 89 ("We enter 2025 with great momentum and look forward to continuing our strong financial and operational performance."); *id.* at ¶ 111 ("We feel that as long as we receive fair and reasonable payment from either the arbitration process or from changes in payer behavior, our lower cost model will be sustainable and repeatable."); *see also Nathenson v. Zonagen Inc.*, 267 F.3d 400, 418 (5th Cir. 2001) ("generalized positive statements about a company's progress are not a basis for liability"); *Carlton v. Cannon*, 184 F. Supp. 3d 428, 493 (S.D. Tex. 2016) (Rosenthal, J.) ("we are seeing significant operational progress" constitutes corporate optimism).

*e.g.*, *Phillips*, 2016 WL 4523849, at *2 (restatement resulting in $650,000 net earnings reduction over two years was immaterial); *Plumbers, Pipefitters & MES Loc. Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 335–37 (S.D.N.Y. 2012) (restatement resulting in only negative impact on shareholder equity, and not profits or losses, was immaterial).

In *Phillips*, the company's restatement of two-years' worth of financials amounted to a decrease of less than two percent of the company's earnings, and the court concluded that "[a] reasonable investor would not have considered this minor restatement significant." 2016 WL 4523849, at *2. So too here, because the restatement was "non-cash in nature," had no material effect on performance, liquidity, or operating cash flow, and actually resulted in an ***increase*** in net income. Ex. 13 at 64. In light of the market reaction to the restatement, *see infra* at § I.C.2, it is clear that reasonable investors did not consider the now-restated financials to be significant "such that it alter[ed] that total mix of information available about the proposed investment." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d at 375.[23] This alone warrants dismissal.

Additionally, Plaintiffs' allegation that Nutex should have recognized its stock-based compensation as liability, not equity, rests on a disagreement in accounting opinions, which cannot state a securities claim. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) ("sincere statement of pure opinion is not an untrue statement of material fact, regardless of whether an investor can ultimately prove the belief wrong"); *see also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 618 (9th Cir. 2017) (plaintiff did not satisfy *Omnicare* where failed to allege actual assumptions defendants relied on in conducting GAAP goodwill valuation analysis); *Hunt v. Bloom Energy Corp.*, No. 19-CV-02935, 2021 WL 4461171, at *4–6 (N.D. Cal. Sept. 29, 2021) (application of GAAP to

---

[23] In fact, Nutex's stock price ***increased*** after Nutex's restatement. *See infra* at § I.C.2.

contingent liabilities were opinions under *Omnicare*, where accounting standards required exercise of judgment in estimating future costs and losses), *aff'd sub nom. Hunt v. PricewaterhouseCoopers LLP*, 159 F.4th 603 (9th Cir. 2025).  When a plaintiff alleges an opinion is materially misleading, the plaintiff must allege **both** that "the speaker did not hold the belief she professed" **and** that the belief is objectively untrue.  *Omnicare, Inc.*, 575 U.S. at 186.  This heightened pleading burden "is no small task for an investor."  *Id.* at 194.  Plaintiffs have utterly failed to allege that Nutex did not genuinely hold its opinion that classifying stock-based compensation as equity, not liability, was correct or that such opinion was objectively untrue.  *See supra* at § 1.A.3.

### 3.    Defendants' Forward-Looking Statements Are Protected by the PSLRA's Safe Harbor.

The Court also can dismiss Plaintiffs' claims because Nutex's public filings identify forward-looking statements, which include "a statement of the plans and objectives of management for future operations," "a statement of future economic performance," and "any statement of the assumptions underlying or relating to any [forward-looking] statement."  15 U.S.C. §§ 78u-5(c)(1), 78u-5(i)(1)(B)–(D).  Many of the statements Plaintiffs challenge constitute forward-looking statements and are thus protected by the PSLRA's safe harbor, including those regarding projections for Nutex's IDR success, *see, e.g.*, AC ¶¶ 86, 97, growth and revenue projections, *id.* at ¶¶ 89, 101, 111, and Nutex's efforts to remediate material weaknesses in its internal controls for financial reporting, *id.* at ¶ 64.

Forward-looking statements cannot serve as a basis for Plaintiffs' Section 10(b) claim unless they can show **both** that the Individual Defendants made the statements with "actual knowledge" that they were false, **and** that the statements were not "accompanied by meaningful cautionary statements."  15 U.S.C. § 78u-5(c)(1)(A)(i)–(B)(i).  Although Plaintiffs assert in conclusory fashion that the Individual Defendants "knew the forward-looking statement was false

or misleading," AC ¶ 144, and that the statements did not contain meaningful cautionary language, *id.* at ¶ 143, Plaintiffs fail to make either showing with the required particularity. *First*, Plaintiffs utterly fail to allege particularized facts establishing a strong inference of scienter. *See supra* at § I.A. *Second*, these statements were identified as forward-looking and accompanied by meaningful cautionary language. Nutex's SEC filings and earnings calls contained general cautionary language regarding forward-looking statements and incorporated relevant or similar risk factors sufficient to render the accompanying forward-looking statements inactionable.[24]

Because the disclosures on which Plaintiffs' allegations hinge are amply covered by risk disclosures and are textbook examples of protected forward-looking statements that address the very issues of which Plaintiffs complain, Plaintiffs' claim is precluded as a matter of law.

### C.   The Complaint Does Not Adequately Plead Loss Causation.

Plaintiffs' failure to adequately plead that the IDR Allegations and Restatement Allegations directly caused investors financial loss is another independent ground for dismissal.

### 1.   The Blue Orca Report Does Not Constitute a Corrective Disclosure.

Courts frequently dismiss Section 10(b) claims based on short-seller reports "derived from publicly available information that by its very nature was equally available at all times to [the p]laintiffs." *Coggins v. Camber Energy Inc.*, 693 F. Supp. 3d 736, 747 (S.D. Tex. 2023); *see also Meyer v. Greene*, 710 F.3d 1189, 1199 (11th Cir. 2013) ("mere repackaging of already-public information by an analyst or short-seller is simply insufficient to constitute a corrective disclosure"); *In re Genius Brands Int'l, Inc. Sec. Litig.*, 763 F. Supp. 3d 1027, 1039–41, 1046 (C.D. Cal. 2025) (short seller report not corrective disclosure as it only contained public information).

---

[24] *See* Ex. 15 at Ex. 99.1; Ex. 16 at 8; Ex. 8 at 9; Ex. 17 at 2, 6; Ex. 18 at 8; Ex. 9 at 3; Ex. 19 at 2, 6. In the earnings calls, Nutex referenced the cautionary language contained in its SEC filings, which is sufficient to bring oral forward-looking statements within the PSLRA's safe harbor. *See McNulty v. Kanode*, No. 13-CV-026, 2013 WL 12077503, at *4–5 (W.D. Tex. Nov. 6, 2013).

The Blue Orca Report admits it contains only information already disclosed to the public *months* prior to its July 22, 2025 publication. *See* Ex. 5 at 25 ("research and analysis based on public information in a manner that any person could have done"). It cites the April 7, 2025 webinar and May 2025 CMS data that both disclosed, among other things, Nutex's partnership with HaloMD. *Id.* at 6, 17; *see also supra* at n.3. The Blue Orca Report also cites publicly available lawsuits filed against HaloMD as early as May 2025, **which had already been reported by other analysts**. *See* Ex. 5 at 1; *see also* Ex. 20 at 1 (reporting on impact of Georgia lawsuit filed against HaloMD on Nutex's stock price).[25] Consequently, the Blue Orca Report is not a corrective disclosure since the information therein already was known to the market. *See Amedisys*, 769 F.3d at 323 (article based on public records not corrective); *Emps.' Ret. Sys. v. Whole Foods Mkt., Inc.*, 905 F.3d 892, 904 (5th Cir. 2018) (no corrective disclosure from already disclosed information).

Moreover, Plaintiffs' reliance on HaloMD's purportedly improper IDR practices—based entirely on unadjudicated allegations in other lawsuits—to plead loss causation has been rejected as a matter of law. *See Genesee Cty. Emp.'s Ret. Sys.*, 667 F. Supp. 3d at 331 ("unconfirmed allegations" in another lawsuit do not establish loss causation). At its core, loss causation requires the revelation of "relevant or related truth about the fraud." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009). Here, there have only been accusations—no revelations.

Finally, Plaintiffs allege the Blue Orca Report led to a 10% stock drop. AC ¶ 6. In reality, the stock dropped 7.1% from $100.01 to $92.90 on July 23, 2025 (**less** than a 10% drop), traded between $84 and $96 for the next three weeks, and increased to $105.19 by August 13, 2025. Ex. 12 at 3. This modest stock drop, coupled with a quick recovery, does not adequately plead

---

[25] The Court may take judicial notice of public analyst reports. *See Firefighters Pension & Relief Fund of City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882, 901–02 (E.D. La. 2014).

loss causation.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) ("stock recovered very shortly after the modest 10% drop that accompanied [] announcement"); *Bajjuri v. Raytheon Techs. Corp.*, No. 20-00468, 2023 WL 3650554, at *15–16 (D. Ariz. May 25, 2023) (no loss causation where stock dropped 7% and recovered quickly).

### 2. The Restatement Does Not Constitute a Corrective Disclosure.

Plaintiffs do not allege *any* economic loss connected to the Restatement Allegations whatsoever, which alone is fatal to their Section 10(b) claim.  *See* AC ¶¶ 138–41.

Even if Plaintiffs had alleged any loss causation, as a matter of law, neither Nutex's restatement announcement (August 20, 2025, *id.* at ¶ 61) nor restatement itself (November 18, 2025, *id.* at ¶ 9) can be corrective because they were made *after* the Purported Class Period (August 14, 2025, *id.* at 1).  *See Magruder v. Halliburton Co.*, No. 05-CV-1156, 2009 WL 854656, at *15 (N.D. Tex. Mar. 31, 2009) (finding failure "to connect the alleged misrepresentations with correlative disclosures during the [c]lass [p]eriod" grounds for dismissal); *In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 910 (W.D. Tex. 2008) (alleged corrective disclosure issued *three days after* putative class period "could not have caused the [p]laintiffs any loss").[26]

Additionally, Plaintiffs' failure to allege a corrective disclosure causally connected to a stock drop—with no other possible explanations—dooms their claim.  *First*, the stock price *increased* from $92.75 to $96.18 upon the initial August 20, 2025 announcement of the need for restatement.  Ex. 12 at 3.  And, after the November 18, 2025 restatement and second-quarter

---

[26] While the AC is unclear, to the extent Plaintiffs allege Nutex's press release on August 14, 2025 is corrective of any truth Nutex concealed from the market, such claim would be unavailing because the press release merely revealed that current financials would be delayed and that treatment of stock-based compensation was being evaluated and would be a non-cash adjustment that would not affect performance, liquidity, or operating cash flow, and, thus, is not corrective, or even connected, to the purported Restatement Allegations.

financials, Nutex's stock *increased* again, from $99.20 to $112.19, $142.24, and $136.92, respectively, over the next three days. *Id.* This does not—and cannot—support the element of loss causation. *Second*, the lack of a negative reaction from analysts to Nutex's restatement further undermines the plausibility of loss causation. *See Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 228 (S.D.N.Y. 2009) (no loss causation where "market analysts did not react too negatively to the news"). Here, analysts were generally unconcerned about Nutex's need for restatement, highlighting that it was non-cash and did not materially affect EBITDA, liquidity, or cash flow. *See* Ex. 21 at 1 (items are "non-cash in nature [and] will not impact income statement items" and "our investment thesis on the name is unchanged"); Ex. 22 at 1 (similar); Ex. 23 at 1 ("[R]estated financials reveal . . . no change in revenue, only minor adjustments to EBITDA (and confined to 2024), and an actual increase in EPS for Q1 of [2025]."); Ex. 24 at 1 ("we are pleased by the company's successful filing of restatements . . . , particularly as these adjustments were non-cash in nature and did not materially affect reported top-line performance").

For these reasons, Plaintiffs fail to plead Defendants' alleged wrongful acts caused a loss.

## II.   PLAINTIFFS' SECTION 20(a) CLAIM SHOULD BE DISMISSED

Because Plaintiffs do not allege a primary violation of Section 10(b), their Section 20(a) claim fails. *See Southland Sec. Corp.*, 365 F.3d at 383 ("Control person liability is secondary only and cannot exist in the absence of a primary violation."); *Callinan v. Lexicon Pharms., Inc.*, 479 F. Supp. 3d 379, 441 (S.D. Tex. 2020), *aff'd*, 858 F. App'x 162 (5th Cir. 2021).

## <u>CONCLUSION</u>

For the foregoing reasons, the AC should be dismissed with prejudice.

Dated: April 3, 2026

Respectfully submitted,

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Roger B. Cowie*
Roger B. Cowie
State Bar No. 00783886
S.D. Tex. Bar No. 18886
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
T: (214) 740-8000
F: (214) 740-8800
roger.cowie@troutman.com

Mary M. Weeks (admitted *pro hac vice*)
Bianca N. DiBella (*pro hac vice* pending)
600 Peachtree St. NE, Suite 3000
Atlanta, Georgia 30308
T: (404) 885-3000
mary.weeks@troutman.com
bianca.dibella@troutman.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on April 3, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the counsel who have registered with this Court.

/s/ *Roger B. Cowie*
Roger B. Cowie